IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR 06-00189 SBA |
| Plaintiff. | |
| v. | **ORDER** |
| MICHAEL GREEN JOHNSON, et al., | [Docket No. 28] |
| Defendants. | |

This matter came before the Court on the United States' Appeal of Magistrate's Pre-Trial Release Order for Defendant Sherman Gay ("Appeal"). Having read and considered the papers filed in connection with this Appeal, the arguments advanced by the parties at the hearing, and being fully informed, the Court hereby GRANTS the United States' Appeal for the reasons set forth herein and on the record at the April 4, 2006 hearing.

**BACKGROUND**

According to the March 13, 2006 Criminal Complaint filed in this matter, on or about January 4, 2006, Defendant Sherman Gay ("Defendant") purchased 194.5 grams of a mixture or substance containing 77.8 grams of actual methamphetamine from alleged Project Trojans[1] member and co-defendant Bobby Ray Williams. The exchange of drugs for cash was observed by FBI agents and Contra Costa County Sheriff's Office ("CCCSO") deputies. Following the transaction, the agents and deputies followed Defendant's vehicle as it entered Interstate 80 toward Sacramento. When a CCCSO patrol unit attempted to conduct a traffic stop, Defendant refused to stop and continued to drive eastbound. As Defendant drove across the Carquinez Bridge, he threw the methamphetamine he had

---

[1] Project Trojans is a violent street gang that controls the narcotics trade within North Richmond, California. Defendant is not alleged to be a member of Project Trojans.

just purchased out of the passenger side window of his truck, which was immediately recovered by pursuing officers. Defendant finally yielded to the authorities before entering the toll plaza on the east side of the bridge. Defendant was subsequently arrested for possession of methamphetamine for sale.

Following his arrest, Defendant was advised of his Miranda rights, waived them, and agreed to speak with deputies. Defendant admitted that he had purchased methamphetamine from Bobby Ray Williams on that night and others in order to sell methamphetamine in smaller quantities in the Sacramento area. Defendant was not charged at that time and was not told that he was the subject of a larger federal investigation.

On March 13, 2006, Magistrate Judge Zimmerman signed a Criminal Complaint charging Defendant and fourteen others with a narcotics trafficking conspiracy. On March 14, 2006, Defendant was arrested by CCCSO and brought to the FBI. Later that day, he appeared before Magistrate Judge Zimmerman and requested a detention hearing before Magistrate Judge Brazil.

On March 22, 2006, Defendant appeared before Magistrate Judge Brazil for a detention hearing. At the hearing, the Government moved for detention on the grounds that Defendant is a danger to the community and a flight risk. Magistrate Judge Brazil ordered that Defendant be released to his home in Sacramento on electronic monitoring following the posting of a $250,000 bond secured by approximately $160,000 to $180,000 in equity of a home owned by Defendant's girlfriend, Andrea Gant ("Gant"), and Gant's adult daughter, Rashida Maire Polk. Defendant's sister, Bridgette Gay, and brother, Tarianna Gay, were also asked to co-sign on the bond as sureties. The Government immediately requested that the Order be stayed until 5:00 p.m. on March 23, 2006 to allow the Government to file an appeal.

On March 23, 2006, the Government filed the instant Appeal.

## LEGAL STANDARD

If a person is ordered released by a magistrate, the attorney for the Government may file, with the court having original jurisdiction over the offense, a motion for revocation of the order or amendment of the conditions of release. 18 U.S.C. § 3145 (a). Motions to review or to amend bail orders by magistrate judges are reviewed de novo. United States v. Koenig, 912 F.2d 1190, 1192 (9th

Cir. 1990).

The Bail Reform Act requires the release of a person facing trial under the least restrictive condition or combination of conditions that will reasonably assure the appearance of the person as required and the safety of the community. 18 U.S.C. § 3142(c)(2); United States v. Motamedi, 767 F.2d 1403, 1405 (9th Cir.1985). The government must establish danger to the community under a clear and convincing standard and flight risk under a preponderance of the evidence standard. Motamedi, 767 F.2d at 1406. However, in cases involving narcotics offenses, the Bail Reform Act establishes a rebuttable presumption that the defendant is both a flight risk and a danger to the community. 18 U.S.C. § 3142(e). The presumption exists if there is "probable cause" that the defendant committed a narcotics offense for which a maximum term of imprisonment of ten years or more is prescribed. Id. A grand jury indictment suffices to establish "probable cause" under 18 U.S.C. § 3142. United States v. Vargas, 804 F.2d 157 (1st Cir. 1986). Once the presumption is triggered, the defendant has the burden of producing or proffering evidence to rebut the presumption. United States v. Hare, 873 F.2d 796, 798 (5th Cir. 1989). However, the defendant only has the burden of producing rebutting evidence, not the burden of persuasion. United States v. Reuben, 974 F.2d 580, 586 (5th Cir. 1192).

If the defendant proffers evidence to rebut the presumption, the Ninth Circuit has identified several factors that the Court must take into account when determining whether pretrial detention is appropriate: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the person; (3) the history and characteristics of the person, including his character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug and alcohol abuse, criminal history, record concerning appearance at court proceedings, and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. 18 U.S.C. § 3142(g); Motamedi, 767 F.2d at 1407. In making its ultimate determination, the court may still consider the finding by Congress that drug offenders pose a special risk of flight and dangerousness to society. Reuben, 974 F.2d at 586.

### DISCUSSION

In the instant Appeal, the Government argues that Defendant has not presented any facts

sufficient to rebut the legal presumption that he is a danger and a flight risk. In support of this argument, the Government focuses on two assertions: (1) that Defendant's sureties are "dubious" because one surety, Andrea Gant, has sustained convictions for narcotics trafficking, theft, and forgery, and because another surety, Defendant's brother, has also been convicted of drug trafficking; and (2) that electronic monitoring will not prevent Defendant from continuing to engage in drug trafficking from his house.

Considering Defendant's sureties first, the Court finds that Ms. Gant's extensive criminal history does not provide the Court with the type of assurances that are typically provided when a surety is willing to sign a property bond. For example, Ms. Gant has sustained misdemeanor convictions for grand theft and petty theft. She has also sustained felony convictions for selling controlled substances and possession of forged notes. Although some of these convictions were sustained over twenty years ago, it is the nature of the convictions that the Court finds troubling, particularly in light of her association with Defendant, who is charged with a very serious narcotics offense.

Further, of primary concern to the Court is Defendant's inability to persuade the Court that the conditions imposed by Magistrate Judge Brazil are sufficient to overcome the presumption that Defendant is a flight risk *and* a danger to the community. For example, having reviewed United States v. O'Brien, 895 F.2d 810, 816 (1st Cir. 1990), the Court does not agree with Defendant that it is clearly established the condition of home detention with electronic monitoring, alone, is sufficient to overcome the presumption. In fact, in O'Brien, the First Circuit affirmed the magistrate judge's pretrial release order only after expressly noting that the magistrate had imposed conditions in *addition to* electronic monitoring. Id. ("The magistrate, however, did not rely entirely on the bracelet in finding that O'Brien had rebutted the presumption. She also considered the availability of a surety which, by all appearances, is so vital to defendant that he sought hard and long to avoid offering it.").

Moreover, the Court finds that Defendant has simply been unable to sufficiently address the Court's concerns regarding the possibility that Defendant could continue to engage in drug trafficking while under home detention. Although Defendant contends that the possibility of further drug trafficking has now been eliminated by the arrest of his supplier, the Court is mindful of the fact that there are countless ways that drug trafficking can continue, even when the original source of choice has been removed. The Court is also mindful of the fact that drug trafficking is a lucrative cash business,

4

which can easily be conducted from the home, and which can easily supply Defendant with sufficient funds to abscond from custody were he so inclined. Thus, as stated by the Court at the hearing, while electronic monitoring would be useful in the sense that it would alert the Court as to *whether* Defendant has fled, it is not actually useful for preventing escape in the first place. Further, having considered Defendant's background and overall criminal history, the Court does not agree with Defendant that it can comfortably assume that Defendant would be more likely to place the needs and financial future of his family over his own needs.[2] The Court reaches this conclusion even in light of the testimony presented to the Court which suggests that Defendant may have been aware of the seriousness of the instant charges as early as January 2006.

Thus, although the Court is mindful of the fact that Defendant's burden is slight, the Court finds that Defendant has not met his burden in producing credible evidence that there are conditions of release that will reasonably assure that Defendant is not a danger or flight risk. Since the Court concludes that Defendant has not offered enough evidence to rebut the presumption that he is a flight risk and danger to the community, the Court need not proceed to separate analysis of the factors set forth in 18 U.S.C. § 3142(g). However, the Court hereby finds that these factors also strongly favor detention.

For example, with respect to the nature and seriousness of the offense, the Court concludes that this factor weighs heavily in favor of detention. Indeed, the grand jury has indicted Defendant for conspiring to distribute and possess with intent to distribute over 5 kilograms of cocaine, over 50 grams of cocaine base, over 500 grams of a mixture or substance containing cocaine base, and over 50 grams of pure methamphetamine. Defendant is specifically charged with possession with intent to distribute over 50 grams of pure methamphetamine. Moreover, due to Defendant's three prior narcotics felony convictions, Defendant faces a mandatory minimum sentence of life imprisonment without release if the Government files an information alleging these convictions.[3] It is therefore without question that the instant charges are of a very serious nature.

---

[2] To the contrary, it appears from Pretrial Services' report that Defendant has been depleting his parents' financial resources by relying on the disability aid they receive, rather than earning his own lawful income.

[3] Even if Defendant had not sustained any prior convictions for a felony drug offense, he would still be facing a mandatory minimum sentence of not less than ten years imprisonment.

1  With respect to the weight of the evidence, although this is the least important factor due to the
2 early stage of the instant proceedings, the Court finds that this factor also favors detention. Although
3 Defendant points out that he has not yet received any discovery from the Government and therefore is
4 not in the position to comment on it, the Government maintains that the evidence against Defendant is
5 "damning." Specifically, the Government relies on the fact that Defendant was intercepted on a wire
6 tap ordering narcotics and was observed to be purchasing narcotics. Thus, it appears to be beyond
7 dispute that – due to the fact that several agents witnessed Defendant's actions – the weight of the
8 evidence against Defendant is fairly substantial.

9  As to Defendant's history and characteristics, this factor also weighs in favor of detention.
10 Defendant's criminal history is extensive. Defendant has sustained two felony narcotics trafficking
11 convictions, one felony narcotics possession conviction, one conviction for possession of a firearm, and
12 two convictions for obstructing/resisting officers. Defendant has also previously violated the terms of
13 his probation.

14  Although Defendant argues that he has substantial ties to Sacramento and the Bay Area, and is
15 the primary care-giver for his elderly and infirm father, the Court is troubled by the fact that Defendant
16 engaged in the instant conduct while presumably responsible for his father's care. The Court also finds
17 Defendant's argument substantially undermined by the fact that he appears to have subsisted solely on
18 his parents' aid, rather than having sought and maintained gainful employment.

19  Finally, as to the danger to the community, the Court finds that the Government has persuasively
20 shown that Defendant poses a heightened risk due to the strong likelihood that he will continue to
21 engage in drug trafficking activities. This conclusion is supported by the finding by Congress that drug
22 offenders pose a special risk of flight and dangerousness to society. Reuben, 974 F.2d at 586.

23  After considering all of the relevant factors, the Court finds that the Government has established
24 by clear and convincing evidence that there are no conditions that would reasonably assure the safety
25 of the community. For the same reasons, the Court finds that the Government has established by
26 preponderance of evidence that there are no conditions that would reasonably assure Defendant's
27 appearances in court.
28

6

**CONCLUSION**

IT IS HEREBY ORDERED THAT the United States' Appeal of Magistrate's Pre-Trial Release Order for Defendant Sherman Gay [Docket No. 28] is GRANTED.

IT IS SO ORDERED.

Dated: 4/10/06

SAUNDRA BROWN ARMSTRONG
United States District Judge